# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY L. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-01667-TWP-DML |
| | ) | |
| INDIANA UNIVERSITY HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Indiana University Health, Inc.'s ("IU Health") Motion for Summary Judgment ([Filing No. 40](#)). Plaintiff Jeffrey Miller ("Mr. Miller") asserted claims against IU Health alleging discrimination on the basis of race and religion, as well as retaliation, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"). For the reasons set forth below, IU Health's Motion is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

The following facts are not in dispute and are viewed in light most favorable to Mr. Miller as the non-moving party. Mr. Miller is an African-American and a Muslim. He began his employment with IU Health on December 3, 2001, as an entry-level multi-skilled worker in Environmental Services at Riley Hospital for Children ("Riley Hospital"), one of the hospitals in the IU Health (formerly Clarian) hospital network. In 2003, Mr. Miller was promoted to the position of maintenance technician, where he performed basic maintenance for plumbing, electrical, and heating equipment, including the heating, ventilation and air conditioning ("HVAC") system. In 2006, Mr. Miller was promoted to the position of HVAC technician and

given a raise, although his duties did not change because he was already performing HVAC work. In 2008, Mr. Miller was required to take an HVAC technician certification test in order to be promoted to the HVAC II position, for which he received a raise. Mr. Miller asserts that he was the only person required to take a certification examination to be classified in the HVAC II position, and the other non-minority employees were not required to take an examination for this classification. In December 2011, Mr. Miller took and passed his certification examination that would make him eligible for an HVAC III technician classification. When he inquired about a promotion to HVAC III, Mr. Miller was informed by his supervisor, Stephen Smith ("Mr. Smith"), that he would not be promoted.

One of Mr. Miller's duties as an HVAC II technician was the performance of annual preventative maintenance on air handler units at Riley Hospital. Air handler units move air to provide heating, cooling, and pressurization to particular areas of the hospital. Outside air is filtered through a series of three filters contained in the handler before the air enters the hospital, including pre-, secondary and final filters. The final filters are HEPA filters designed to remove 99.97% of impurities from the air. Preventative maintenance is performed on the air handlers at varying intervals, such as quarterly or annually, based upon the maintenance to be performed. Each HVAC technician was assigned a group of air handlers for which he was responsible for completing routine maintenance. HVAC technicians would often receive assistance from other technicians in completing the ordered maintenance, but it was each technician's responsibility to sign off on the work orders generated to him for his assigned units.

One of the air handler units assigned to Mr. Miller was R3A3, which is the numbering system used to identify the various air handler units at the hospital. Mr. Miller had been responsible for this particular unit since 2004 when he was still classified as a maintenance

technician. He was responsible for completing the annual preventative maintenance on R3A3. The work order for the unit included, among other tasks, changing the final air filters on the unit. However, during the entire time Mr. Miller was assigned to perform maintenance work on the R3A3 unit, it never contained a final air filter. In March 2011, Mr. Miller reported to his then supervisor, Derek Rife ("Mr. Rife"), that there continued to be rust and corrosion in the unit where the final air filter should have been located, but nothing was done to address this issue. Despite his concerns, Mr. Miller went ahead and signed off on the 2011 work order that the maintenance had been completed.

In March 2012, Mr. Miller completed the work order for the annual maintenance of the R3A3 unit, which again included the task of changing the final filters. The maintenance was performed on March 22, 2012, by Mr. Miller and several other technicians. Mr. Miller and his co-workers assisting him tried unsuccessfully to install high efficiency particulate air ("HEPA") filters on hand, but were unable to do so because they were the wrong size and because the filter brackets were rusted, as was previously reported. Rather than noting on the work order in the comments section that the R3A3 unit lacked a filter, on March 23, 2012, Mr. Miller met with his current supervisor, Mr. Smith, and advised him that there were no final filters in the R3A3 air handler and asked him whether he wanted the filters placed in the unit. Mr. Smith did not respond to Mr. Miller's inquiry regarding whether or not he wanted the HEPA filters installed. That same day, another technician who had assisted Mr. Miller with the maintenance on R3A3, Zach Pate ("Mr. Pate"), reported to Mr. Smith that he was concerned that the air handler was supposed to have final filters, but it appeared that there had not been any in there for some time. Mr. Smith asked another supervisor, Robert Miller, to investigate the R3A3 filter issue, resulting in an audit in April 2012. Following an investigation into the history of Mr. Miller's work orders for the R3A3 unit, it was

discovered that work orders for the R3A3 unit from 2009, 2010, 2011, and 2012 had been signed by Mr. Miller, which all included a notation for changing the final filters, even though the handler did not have a filter to be changed and had not had one for several years. Nevertheless, Mr. Miller had signed off on all of the work orders as being completed. Mr. Miller was immediately terminated in May 2012 for "gross misconduct" and was subsequently informed that it was based upon the allegedly falsified work orders indicating that the filters in the air handling unit had been changed, and that these actions placed the health of the hospital's patients and its accreditation status at risk. In his 11 years of employment with IU Health, Mr. Miller had never received any corrective actions or discipline for his performance prior to his termination.

During his employment, Mr. Miller alleges that he was subjected to racially and religiously offensive graffiti in the workplace. Sometime after July 26, 2011, he observed the statement, "Nigger go home" in the facility maintenance men's restroom, and a drawing of a Muslim in a prostration position engaged in a sexual act in the work area where the filters were stored. Mr. Miller complained about these observations to his supervisor, Mr. Rife, and to security. Mr. Miller had previously filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") in 2006 and 2010, which were both dismissed and not pursued further in court. Additional facts will be addressed below as necessary.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the

record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.     DISCUSSION

Mr. Miller alleges that he was unlawfully terminated based upon his race and religion, and retaliated against for filing prior charges of discrimination with the EEOC and making complaints about racially offensive graffiti in the maintenance facility. IU Health claims that it had a legitimate reason for terminating Mr. Miller based upon the allegedly falsified work orders which erroneously indicated that filters in the R3A3 air handling unit had been changed, and that his claims fail because he was not meeting IU Health's legitimate employment expectations.

### A.     **Racial and Religious Discrimination**

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

5

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Mr. Miller also asserts race discrimination claims under 42 U.S.C. § 1981, which uses the same legal standards for liability as Title VII. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004); *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1028 (7th Cir. 2004). Plaintiffs alleging discrimination under Title VII or § 1981 may prove such discrimination using either the direct or indirect method of proof. *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 849-50 (7th Cir. 2008). Under the direct method, a plaintiff may proffer direct or circumstantial evidence to prove discrimination. Direct evidence establishes "the fact in question without reliance on inference or presumption." *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (citation omitted). A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citation and internal quotations omitted). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Id.* (citation and internal quotations omitted).

If a plaintiff cannot present evidence of discrimination under the direct method, he may pursue his claim using the indirect method. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the indirect method, a *prima facie* case for disparate treatment discrimination requires a showing that: (1) the plaintiff is a member of a protected class; (2) he was meeting the employer's legitimate employment expectations; (3) he suffered an adverse employment action, and (4) was treated less favorably than a "similarly situated" non-protected class member. *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011); *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). If the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse

employment action. *Sun v. Bd. of Trs. of the Univ. of Ill.*, 473 F.3d 799, 814 (7th Cir. 2007). If the defendant does so, the burden shifts back to the plaintiff to submit evidence demonstrating that the defendant's explanation is pretextual. See *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). To establish pretext for purposes of both the direct and indirect methods, a plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [defendant's] proffered reasons that a reasonable person could find them unworthy of credence and hence infer that [defendant] did not act for the asserted non-discriminatory reasons." *Boumehdi v. Plastag Holdings*, LLC, 489 F.3d 781, 792 (7th Cir. 2007).

The Seventh Circuit has recognized three categories of circumstantial evidence that may be used, together or separately, to show discrimination under the direct method: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class received systematically better treatment; or (3) the employer's reason is a pretext for discrimination. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012); *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). The Seventh Circuit has stated that when an employee provides "'[a] detailed refutation of events which underlie the employer's negative performance assessment,' the employee demonstrates 'that the employer may not have honestly relied on the identified deficiencies in making its decision.'" *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) (quoting *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460-61 (7th Cir. 1994)). Furthermore, if the employee offers evidence from which the finder of fact may reasonably infer

that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses. *Id.* (citing *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995)).

Mr. Miller has presented sufficient evidence to create a question of fact for the jury as to whether IU Health's reasons for his termination were pretext for discrimination. "[W]hen the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation." *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998) (citations omitted). Mr. Miller presented evidence that he brought the issue regarding the absence of the filter in the R3A3 unit to the attention of his supervisors at least in 2011, and it was known since at least 2004, when Mr. Miller began doing HVAC maintenance at Riley Hospital, that the unit did not have a filter. Miller Dep. 103:12-104:3 ([Filing No. 42-2, at ECF p. 12](#)); Miller Dep. 121:4-7 ([Filing No. 42-2, at ECF p. 13](#)). In addition, there is at least a question of fact as to whether Mr. Miller reported the absence of the filter to his supervisor, Mr. Smith, in 2012 and asked him how to proceed with the absence of the filter, as opposed to Mr. Smith's account that another employee reported the absence of the filter and/or it was discovered by an audit in April 2012. Mr. Smith claimed not to recall the meeting with Mr. Miller, but Robert Miller corroborated Mr. Miller's account that such a meeting did occur prior to the investigation that Mr. Smith claims led to the discovery of the missing filters. Robert Miller Dep. 57:2-18 ([Filing No. 44-2, at ECF p. 26](#)). IU Health claims that Mr. Miller was terminated for "gross misconduct" by allegedly placing Riley Hospital's patients and accreditation status at risk by falsely documenting that the filters in the R3A3 unit had been changed; however, there is evidence that IU Health was aware of the problems with the unit's filter (or lack thereof) well before Mr. Miller was in his position as a HVAC II technician and did nothing to remedy what it now claims is a very serious issue warranting immediate termination of Mr. Miller, an

employee who had no performance complaints or disciplinary record in his 11 year tenure with the company. These disputed facts warrant a credibility determination by a jury to determine whether the asserted reasons for Mr. Miller's termination were honest, or whether they were pretext for discrimination.

With regard to Mr. Miller's allegations that IU Health unlawfully failed to promote him to HVAC III on the basis of his race and/or religion, he has also presented sufficient evidence to create a question of fact as to whether the reason given by IU Health was pretext for discrimination. IU Health asserts in their affidavits that Mr. Miller was not promoted to the HVAC III position because there were no HVAC III positions available for which he could apply at the time Mr. Miller passed his certification examination. ([Filing No. 42-5, at ECF p. 4](#)). However, Robert Miller testified in his deposition that passing the certification examination was not a requirement to be hired into the HVAC III position, only to keep the job. Robert Miller Dep. 41:12-15 ([Filing No. 44-2, at ECF p. 23](#)). In addition, there is a dispute of fact as to whether Mr. Pate held an HVAC level III certification at the time he was hired in as an HVAC III technician in 2011. Robert Miller Dep. 41:4-24 ([Filing No. 44-2, at ECF p. 23](#)). Mr. Miller testified that he was subject to different testing and promotion standards as the only minority in the department, and there is evidence from which a reasonable jury could infer that this different standard was the reason Mr. Miller was not promoted to HVAC III when there was a position available, not his lack of certification. Miller Dep. 58:15-60:8 ([Filing No. 42-2, at ECF p. 6](#)).

The evidence put forth by Mr. Miller creates a factual issue for the jury as to whether IU Health's explanations for the adverse employment actions are credible or merely pretext for discrimination. *Gordon*, 246 F.3d at 889. (citing *Dey*, 28 F.3d at 1461). While the Court is not in the position to "sit as a superpersonnel department that will second guess an employer's business

decision . . . we need not abandon good reason and common sense in assessing an employer's actions." *Id*. (citing *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)). The Court finds that Mr. Miller has presented sufficient facts from which a jury could infer that the reason given for his termination was not the actual motivation for his discharge and IU Health's failure to promote him, thus summary judgment on his discrimination claims is not warranted. Because Mr. Miller has satisfied his burden on summary judgment under the direct method, the Court does not need to analyze his claim under the indirect burden-shifting method. Therefore, IU Health's motion for summary judgment on Mr. Miller's race and religious discrimination claims is **DENIED**.

**B.     Retaliation Claims**

Mr. Miller also alleges that he was terminated or not promoted in retaliation for making complaints about discriminatory conduct. Title VII prohibits an employer from acting in retaliation against employees who oppose any practice made unlawful under Title VII. 42 U.S.C. §2000e-3(a). Retaliation need not only be based on a formal complaint to the EEOC, as the Seventh Circuit has held that "an informal complaint may constitute protected activity for purposes of retaliation claims." *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)). A plaintiff may establish a *prima facie* case of retaliation using either the direct or indirect method. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). Under the direct method, the plaintiff must present evidence of (1) a statutorily protected activity; (2) an adverse action taken by the employer; and (3) a causal connection between the two. *Id*. at 644.

IU Health argues that Mr. Miller cannot make out a *prima facie* case of retaliation under the direct method because he cannot show a causal connection between the alleged retaliatory

actions—including the failure to promote him to HVAC III and his termination—and his statutorily protected conduct. Mr. Miller argues that the five months between the time he complained about the offensive graffiti and the failure to promote him, and his termination a few months later, is sufficient temporal proximity to infer that the adverse actions resulted from his protected activity. The Seventh Circuit has held that "while '[t]here is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, . . . it is clear that mere temporal proximity is not enough to establish a genuine issue of material fact.'" *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) (quoting *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004)). Mr. Miller has not presented any other evidence from which a reasonable jury could infer that his statutorily protected conduct was the "but for" cause of his failure to be promoted and his termination. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test [for status based discrimination]."). Because Mr. Miller has not met his burden to show that there is a question of material fact on this issue, and has not presented any arguments under the indirect method, IU Health is entitled to summary judgment on this claim. Thus, the Court **GRANTS** IU Health's motion on Mr. Miller's retaliation claim.

## IV. CONCLUSION

The Court finds that Mr. Miller has met his burden of showing that there are questions of material fact as to whether IU Health's reasons for failing to promote and terminating him were pretext for unlawful discrimination on the basis of his race and/or religion, and therefore **DENIES** IU Health's motion on Mr. Miller's discrimination claims. Further, the Court finds that Mr. Miller has not presented sufficient questions of material fact as to his retaliation claim, and therefore

11

**GRANTS** IU Health's motion as to those claims. For the reasons set forth above, IU Health's Motion for Summary Judgment ([Filing No. 40](#)) is **GRANTED in part and DENIED in part.**

    **SO ORDERED.**

Date: 8/29/2014

                                                  Hon. Tanya Walton Pratt, Judge
                                                  United States District Court
                                                  Southern District of Indiana

DISTRIBUTION:

Stephanie Lynn Cassman
LEWIS WAGNER LLP
scassman@lewiswagner.com

Theresa Renee Parish
LEWIS WAGNER LLP
tparish@lewiswagner.com

Steven Sams
STEVEN SAMS, P.C.
stevensamslaw@att.net